Good morning. May it please the Court, my name is David Firmino. I'm an assistant federal public defender, and I represent Matthew Musladin, the petitioner in this matter. Mr. Musladin was convicted in 1995 of first-degree murder and other charges and sentenced to life in prison. He has been in the custody of the State of California for over nine years following a trial in which his right to counsel was violated and the verdict was based on impermissible factors that undermined the fairness of the fact-finding process. While the briefing in this case raises several issues which I believe warrant relief, I would like to take the time available to me this morning to focus on two that I think rendered the trial fundamentally unfair and deprived Mr. Musladin of due process. The first issue relates to the action of the trial judge in responding to a note sent by jurors in the absence of Mr. Musladin's counsel, notwithstanding the fact that Mr. Musladin's counsel had been notified and was prepared to be at the courthouse and, in fact, was at the courthouse ready to discuss that note with the court and opposing counsel. The second issue regards the buttons that were worn by several members of the victim's family during the duration of the trial. These buttons were prominent, displayed a photograph of the victim, and were worn by members of the victim's family who sat behind the district attorney. I gather that we don't have any picture of this photograph, of the buttons at all. There's no ---- That's correct, Your Honor. What is in the record are declarations from a member of the defendant, the Petitioner's family, as well as one other declaration indicating, and I think that's trial counsel's case, indicating the size, the relative size of the buttons and what they depicted. But there are no photographs. But no description of the picture, other than it's a picture of this person. That's correct. It was described as to size, and that ranged anywhere from 2 inches in diameter to 4 inches in diameter, and that it had a picture. But not what he looked like on the picture, whether he looked like a ---- whether he was smiling and looked like a very sweet fellow or whatever. That's correct. There is no description. I would like to take up the first issue, and that is the note which was sent by the jurors. First, it is Respondent's position that the courthouse door should essentially be closed to this claim, and I think that is incorrect, and I want to start there. Excuse me. As a threshold matter, I think this Court's decision in the Himes case is the correct one that should guide us today, and I think that although it is correct that deference under the AADPA should be accorded to the California Supreme Court's decision, precisely because that decision was a postcard denial that is silent as to its reasons, this Court ought to conduct, as the Court said in Himes, an independent review, not de novo review, but a review of the record. An independent review of the record. That's correct. We still have to decide whether the result was objectively unreasonable. That is correct. And I'll get to that point. And in order to do that, is to assume that the State court did whatever it could have done to reach that result. That's correct. Okay. Now there's not really any factual dispute on any of your issues so that we don't have to assume anything about what facts were found. Is that right? That's correct. There isn't a factual dispute as to what occurred. Were the facts about the buttons, for example, in the State court record? Yes, they were. That's right. The various declarations and so on. Correct. And they were also filed, I believe, in the Traverse in this matter. Do you also agree that if there was a violation in the sense that this was a critical stage and the lawyer and counsel should have been present, that it's subject to a harmless error test? I do not. You do not. I do not. What? If we were to conclude that the lawyer should have been allowed to be there when the judge sent in his answer, and if we conclude that that's a critical stage and it's an automatic reversal? I believe that that should be the decision of this Court today. That's correct. Well, no. Is that the law? Where's the authority for that? It seems to me we're quite mixed up about that from what I could tell from the case law. I think that's correct. But I think that if... Well, if we're mixed up, don't you lose? Well, but I think that this Court can correct that. And I think that there is law, to answer Judge Reinhart's question, that supports this position. And I think going back to Kronick, if you view this stage, and that is where a significant aspect of the proceeding has occurred, and that is the jury here was out for two days. They were deliberating for two full days, and they asked a question. That question was, and clearly showed, that they had a problem in understanding express and implied malice. They wanted guidance. But it was a little hard to understand, because I don't think the instructions could have been clearer. The instructions were awfully, awfully clear on that point, weren't they? They were clear, but not to this jury. This jury requested guidance. And I think that's precisely the problem here. When the judge simply referred them back to the instructions and did not allow counsel to be present, and that is both counsel, to be there to... Would you agree that if you had to prove prejudice, you couldn't prove prejudice because the instructions were really clear? I would concede that proving prejudice would be very difficult here, given the instruction that was requested. However, I don't think we'd get there. I don't think we'd get there because I think that in answer to the earlier question, I think that this was a critical stage of the proceeding. And as a result, I think this is a structural error that doesn't require a showing of prejudice. So what's your authority for it being structural error? Again, going back to, I think, threading back to Cronick and the cases following Cronick from this Court, that is, the – anytime the judge communicates to the jury, it is – it has significant consequences for the accused. And it is there that I think Cronick provides guidance in that it defined, really, a critical stage of a criminal proceeding. We have, I mean, a fair amount of, you know, water under the bridge here. We have this Rosales-Rodriguez case, and we have the Fisher v. Roe case, and I don't know what else, at least those. But didn't Rosales-Rodriguez say that in 2002 that it wasn't clearly established by the Supreme Court or the United – or the Ninth Circuit whether this was a critical phase? Well, I think that we can't really rely on the decision if the Court is pointing to the Rosales-Rodriguez case for precisely the reason that we cite, and that is that case didn't deal with the issue of the Sixth – or deal with this issue in the context of the Sixth Amendment right to counsel, and I think that's what we're raising here, and I think that's how we get back to the Cronick case. I think that that – we can really distinguish this Court's decision in Rosales and not find that there is a problem if today this Court were to hold that this is a critical stage of the proceeding. And again, that case, and I'm looking at the Rosales decision, and specifically that would be at page 1111, where the Court says that they are deciding this case under Federal rule of criminal procedure 43. That's the issue that was before the Court. It was not a question of the Sixth Amendment right to counsel, as we are raising here. I think it is – Well, the case said the Constitution does not guarantee that a criminal defendant be present at all stages of the trial, but rather only at a critical stage. Neither the Supreme Court nor our own circuit has previously stated whether the delivery of a supplementary jury instruction constitutes a, quote, critical stage requiring the defendant's presence. And there they were talking about the Constitution. Again, I would – I would urge that that language in Rosales is – that this Court need not follow that language. What about Fisher v. Roe? Wasn't that also dealing with a similar matter in applying a harmless error standard? I think the Court is correct. It is – it is certainly – I think our position is stated – as stated in our briefs is that if you go back to Cronick, I think one can find, beginning with Cronick and other cases that we cite in our brief, that this is a critical stage of the proceeding. One of the few areas we agree with Magistrate Larson's opinion in this matter is, in fact, that the Court found there that this was a critical stage of the proceedings. And I think that there – and if you go back in time, the reasoning in Cronick and the reasoning in the other cases that we cite supports the fact that the reason this is a critical stage is because – precisely because the consequences for the defendant in a criminal trial, when the judge simply refers to the defendant. I think it is a critical stage, and I think that that's what Rosales-Rodriguez says. I think that's right, that it is a critical stage. But what it also said is that we hadn't decided that as of then, and that the United States Supreme Court hadn't decided it. How do we ignore the fact that we have said it was not clearly established? It may be wrong. Maybe. Sometimes we're wrong. Not often. But it's what we said, that it wasn't clearly established. Aren't we bound by that? I think I would concede, Your Honor, that it is difficult to get around the language that appears. So it would be helpful to me if you would discuss the button issue, which I find interesting. Thank you. The respondent in this matter would, I think, have the court cabin the decision in Norris to the facts of that case, and that is that they cite the fact that there were at least 20 individuals wearing buttons that said, women against rape, and in that case it was a rape trial. And as a result, that proceeding was so infected with unfairness that it warranted relief. And this was a case with a self-defense defense, right? That's correct. Something about the victim. The victim, therefore, wasn't just a victim, but was asserted by the defendant to be an aggressor. That's correct.  And I think the question is, what does the court do with the Norris case simply can't be right. It is the – it's not just the number and it's not just the fact that it was a message. Here, the fact that there was a photograph of the victim, and as the Court points out, the victim in this case was, at least as far as the defense was concerned, an aggressor. And as a result, that message sent to the jury was clearly – was clearly that. It was a message indicating that the defendant was an aggressor. And that's why, to me, what really matters, or it could matter, what photographs look like. You know, that this guy's a nice guy and he has a lot of people who love him, and he's probably not an aggressor. I think that's precisely the point behind the buttons. That's exactly what was meant to be conveyed to the jury, and that's precisely why it's our point that the wearing of those buttons and wearing of them throughout the trial really did, in fact – All right, so now we're back to the same question again. Is this a – let's assume for the moment that this is the case. Is this a structural error, or do we look for – I mean, I must say that if we start looking for a harmlessness, that your client's defense was not very believable, that this guy was lying under – that he didn't shoot him under the car, but he happened to have gotten to the car after – under the car after he was dead, among other things. So it wasn't the world's most credible defense, to put it mildly. Do we look at harmlessness or not? I think that under our analysis that this is structural error. I think that it is the kind of error that so fundamentally affects the fairness of the proceeding that we don't have to get to prejudice here. I think that you, as the Court did in the Norris case, I think you look simply to the effect – I mean, strike that you don't look to the effect. That is, you look exactly at the error here, and the error is structural. So I think that that would be my answer, and I don't think we have to get to harmless error. But I would concede that the Court is correct that we would have problems if we had to get to a harmless error analysis in this case on this issue. I would like to at this point reserve my time for rebuttal unless the Court has questions at this point. All right. Thank you, counsel. Good morning. I'm Gregory Ott for Respondent. I'll take these two issues in order. I think – Why don't we go to the button issue first? Okay. Did these family members who were wearing the buttons every day during the trial, they also testified, or all of them, or some of them testified? I don't believe any of them testified. None of them testified. I don't think so. I think it was Tom Studer, the murder victim, Tom Studer's mother, father, and brother. Well, there was also some testimony that on the first day Pam, who I guess was the ex-wife, was wearing one, and her family, and at least she probably testified. But the main people who were wearing them probably didn't testify. The evidence that we have is that there were three buttons in the courtroom. I didn't – if you say you saw evidence that Pam Studer was wearing one, I wasn't aware of that. There was some confusion about it. You had said at one point that there was only evidence that they were wearing them the first day, but that was because you were eliding a separate statement that some other people were wearing them the first day, but that these people were wearing it every day. That's what I understood the record to show. Well – The affidavit says that Pam Misladden and Michael Alboa wore the buttons during the first day of jury voir dire. I'm sorry, what says that? The affidavit of Betty Misladden. I wasn't aware that they were wearing them. I apologize. I didn't – That's all right. It's not a – Didn't recall that. But the others, the brother – the mother, father, and brother wore them every day. Well, that's one of the things I wanted to point out. I think there's a void in the declaration as to how long they wore them. There's an indication that they wore them or they were there wearing them the first day. You see, that's what I'm saying. You're misreading the declaration. This is what it says. The members of his family that wore these buttons, including his mother, father, and brother. My recollection is they all attended the entire trial, sitting immediately behind the district attorney adjacent to the trial. I also recall that Pam Misladden, Pam's mother, and Michael Alboa wore the buttons during the first trial of jury voir dire. But one of the things I pointed out was it was unclear. You can infer that she means that they wore them every day of the trial. But I don't think that's necessarily the inference that comes from that. That's what I was pointing out. Also, the inference of Frank Taranto's declaration, that they were there, they were there every day. He saw them wearing buttons. He made a motion to direct them to remove the buttons, and the motion was denied. I think the most reasonable inference is that they continued to wear them. Okay. We can accept that. I don't think that it has a consequence here. I think that. That may well be. Beg your pardon? That may well be. The buttons, a simple picture. I don't know. There isn't evidence that I saw as to whether he was smiling, whether it was a full biased shot or what have you. The jury had already seen autopsy photos of Studer. The jury was instructed not to be swayed by prejudice, passion. The trial judge was present and saw the buttons and did comment that I don't see. He commented that there wasn't a legend on them. He did see them when there was the request for them to be removed, and I think his assessment of whether they posed prejudice should be given great weight because he was there and viewed them. We can say that it probably would have been better judgment at this point or in hindsight to have them take it off. It wouldn't have taken a lot of sight, hind or fore, for a judge to realize that that was not a wise decision. Probably. But as to the prejudice aspect of it. I must say, what's bothering me about the prejudice, not the prejudice aspect. I think prejudice is difficult for the reason I said, and I want to get to that. But as to how to characterize this. As I said, and I'd like to hear your comment about it, the fact that this was a self-defense defense, rather than just some victim that he came upon, seems to me to be of significant importance as to the possible import of this button. Well, I can appreciate your view on what it might have conveyed, that this was a nice guy and he wouldn't be an aggressor. My counter to that is that it was a symbol of remembrance by a victim's family. If there had been no self-defense issue, I would say, well, all it showed was that, you know, we love this guy and we hope somebody is brought to justice, but it wouldn't really say anything in particular about the evidence in the case. But here it seems to me possibly to have had some import on the evidence in the case. I respectfully submit that it didn't have any. The inferences could be drawn from it, but I don't think that's the only one or the one that should be drawn. I think that it was simply the victim's family remembering the victim. And I also would like to point out on the subject of self-defense, we have to remember that the evidence of aggression by Tom Studer was virtually nil. There was no evidence he was armed at all and he was shot point blank in the head as he was laying down already shot. But that was not the defendant's story, right? That's right. But the defendant's story conflicted with virtually all other pieces of evidence. So therefore, can you address the question of suppose we thought there was something wrong with these buttons, how would we analyze the question of whether or nil this kind of thing is structural error, isn't it? Well, I'm a little embarrassed to say that when you raised that question, I looked through my brief and I didn't see a discussion of whether it was structural or subject to harmless error. One thing I can point out is that the Holberg test includes an element of prejudice in that the ultimate, what it said in the opinion is that the ultimate question is whether this was inherently prejudicial. And I do think you have to look at all the facts, not just the buttons, but I think you have to look at the buttons of the context of the evidence that was presented and all the other circumstances. So I think I can't be certain of this, that there isn't case law addressing whether this is structural or not, but Holbrook itself certainly has an element of prejudice built into its test. It says the question is whether it's so inherently prejudicial that it affects the integrity of the trial itself, which pretty much is structural. I mean, they don't talk about it in terms of structural and non-structural, but it talks. And in Norris, that was what they did. They said that it was so prejudicial. It does. I guess what I'm saying is that to get to that point, you do have to look at prejudice. It's sort of like the due process admission of evidence, whether it's so ‑‑ whether the admission of evidence was so prejudicial that it would violate a due process. You kind of have already answered the prejudice question. But they didn't do, I don't believe, what you're arguing for has some attraction, but it seems to me to run up arguably against Norris and Holbrook, because in neither of those cases did they look at the facts of the case, did they? They looked at whether what was done was likely to turn the jurors against the person, against the defendant, without looking at whether the strength of the evidence was such that that would make a difference. They never looked at that, did they? I don't remember whether they did or they didn't. They certainly looked at the circumstances of the buttons themselves. Well, right, that's exactly the point. And they looked to see if there's an unacceptable risk is presented of impermissible factors coming into play. That would suggest that you would look at it and say, would the buttons present a risk that people would, the jurors would, consider the question that whatever you think the buttons present to the jury, if, as Judge Berzon suggests, if you believe that the buttons would say to the jurors, here's a really fine fellow who is not likely to be an aggressor, that would be the factor that would come into play if the buttons present that kind of an impermissible risk. It doesn't really matter whether there's other evidence that shows he is a nice fellow or isn't, or that the defendant's a bad guy. The question is, do these buttons put into play in the jurors' minds the issue that Judge Berzon suggests? Well, if we look at that or answer that question, it seems we necessarily are looking somewhat at the facts of the case, meaning his defense of self-defense and that he was a victim who was accused of being an aggressor. So it seems that if we answer that question, we are getting somewhat into the facts of the case. And although not directly answering that question, I do think the circumstances of the buttons are distinguishable from Norris and that you do have to look at how many buttons, how big, what did they say, if they said anything. I do think that's relevant. I think that's absolutely correct. You look at all the factors surrounding the buttons. Aside from what the testimony in the trial is, that's another question. But you look at how many buttons, how long were they worn, what message do they convey. Yeah. Is there anything we could do at this point to find out more about what those – would any evidentiary hearing be any use at all with regard to knowing more about those buttons? Well, we could see what we can dig up. I frankly can't remember whether I, in state court, I handled this in state court and I believe there was a habeas with a requested response. I can't remember what I did in terms of trying to dig that up. I may have found that no one remembered. No, it could really matter. I mean, that's one of the things that really baffles me. I mean, I can imagine, you know, little buttons that would carry a message, just play a picture, and now there's that one. I don't know the answer to that. I don't know what would exist in terms of memories or the buttons themselves. I can't – like I said, I can't recall what investigation I did at the time. It's been quite a while. I do think that the state court, when it denied this claim on the evidence before it, could have reasonably denied it. He'd seen them. Pardon? The state court has seen them. It was the state trial court that denied it who originally had seen the pictures. Correct. But when it was brought up on appeal that the state court – They hadn't seen them. They had not seen them, but that they felt that there wasn't sufficient evidence presented to them to warrant relief. And I think that decision was reasonable, that the evidence can't just keep mounting until we get to federal court and we add more to it, which I don't think it has been. But I think the state court was reasonable in that, defendant, if this is all you have to proffer, it's not enough to warrant relief. Would the court like me to address still the first question, the first issue, or do you have questions on the button issue still? Briefly on the first issue, I do think the two problems with the claim are, one, there isn't clearly established Supreme Court authority for the proposition that this is a critical stage. I haven't seen case law making the distinction between critical stage in the context of presence of a defendant and critical stage in the context of counsel, at least in circumstances approximating these. But more clear is that the case law treats this sort of situation as subject to harmless error and, conversely, there isn't any Supreme Court case law saying otherwise. This was, in some ways ‑‑ But it is a little odd because that certainly chronic says that, at least that there are some critical stages in which you ‑‑ The whole point of chronic is that in certain, some critical stages, we can't know what the impact of not having a lawyer is and we don't do harmless error review, right? Correct. So what's the line? Are we saying that there's simply ‑‑ And the recent case, the 2002 case, Rosales v. Grigas, seems to say that this is a critical stage. So how do you get then to the point that there are some critical stages as to which there's structural error and others that there's ‑‑ that seems to be inconsistent with the whole concept of what a critical stage is. I understand. I recognize that nuance. I don't know the answer to it, although chronic and some of the cases like that, putting forth the broader propositions, certainly involves an error or an absence that permeated much more. Obviously, we can't go on the time of the absence alone, but we can't help but look at that. This was very abbreviated. Do you think at all, I mean, there's a suggestion in your brief that I thought was odd because I couldn't quite know how you'd administer it, that it matters what the judge actually did, that if all the judge did was ‑‑ you seem to be suggesting that if he had done something affirmative rather than simply saying go back and read the instruction I already gave you, that the answer might be different. I think so. I think so. I don't have ‑‑ I haven't seen authority on that, but there's something about this where we have agreed upon instructions with counsel present. Everyone's agreed that these instructions go forth, and the judge is simply saying refer back to those, whether that's a wise move or not, that that seems to me to be a nonsubstantive response as opposed to an elaboration, which is certainly more substantive. I think the problem, I had a problem with that analysis, in that it seems to me you're making the question of whether it's a critical stage depend on what the judge did rather than saying yes, it's a critical stage, but the error is harmless because the judge merely told him to do something that is permissible, go back and look at the instruction. It's a critical stage, but there was ‑‑ and they should have had a lawyer, but what happened doesn't warrant reversal. You're doing it at the first step instead of the second step and saying when the judge merely sends it back, it's not a critical stage. I did make that argument. I don't think it's my strongest. I think my stronger overall argument was that there wasn't clearly established Supreme Court authority that this was a critical stage, whether it's substantive or not, meaning answering a jury's question. So there's no Supreme ‑‑ so basically where we are then is that we have law saying it's a critical stage but treating it as harmless error. While that might be problematical, the Supreme Court doesn't have any law saying it's a critical stage. Is that what you're saying at all? That's what I'm saying, but I think this case on this claim should succeed or can be disposed of on the fact that there certainly or more clearly isn't Supreme Court authority that this is structural. Notwithstanding the nuance that Judge Bazan raised between chronic and how you draw the line, there certainly are cases that say that a response to a jury's question may be a critical stage, regardless of whether it is that it's subject to harmless error. That I have problems with because chronic seems to say that if it's a critical stage, it is structural. So I'm asking you now, is there a Supreme Court law that this kind of a stage is critical? Is there a Supreme Court law that says this stage is critical? I mean when the jury comes back with a question. I don't believe there is. So why isn't that your stronger argument? Well, because. Because otherwise you get into this anomaly, which is if it's a chronic, if it's a critical stage, then it is structural. I see your point. It can be resolved with the first one. I guess what I was thinking is that the harmlessness I thought was so clear that it could be resolved there first. We avoid the anomaly, true, if we determine that it's simply not a critical stage. Now this Court has held that it's a critical stage, but your argument is that the Supreme Court has. Right. It's an ADPA. It's harmless to supplies. It's that kind of critical stage. It's hard for it to. Right. My argument on the critical stage was more of an ADPA argument. I do recognize that there are a certain authority to the contrary. I see that my time is about up. Does the Court have any further questions? Thank you, counsel. Thank you very much. Thank you. I'd just like to be heard briefly on a couple of points. First, I want to take up on a question that Judge Berzon asked of Respondent, and that is with respect to what remedy, short of relief, might this Court grant on the record. And I think here certainly a remand to Magistrate Judge Larson for an evidentiary hearing to augment that. But why an evidentiary hearing? Was it not an opportunity for the factual development in the State court? I don't believe that that I don't think I could say here that there was not an opportunity for fact-finding. I think that it is, however, the record that was presented to that was before Magistrate Larson was such that the kind of questions that are being asked here today cannot be answered. Another question is, are we free to develop the facts in the Federal court if they weren't developed in the State court? I would concede that there is difficulty with that. Especially because, I mean, what's frustrating here is that they were developed in the sense that those buttons were in the courtroom and the judge saw them, but they just didn't make it into the record in terms of actual what they physically looked like. That's correct. And so I think this Court is left with the difficulty. If the Court were to base its decision on the – on a description, and that is just how large the buttons were, what they depicted, how the victim was depicted, that's missing from our record. And I think that the – Well, I thought the size is there and what they depicted, but what isn't there is the actual photograph. Well, there's conflicting – there are conflicting statements as to the declarations from trial counsel and the defendants, the Petitioner's mother, as to the size of the buttons. I think, as I said earlier, they range from somewhere in 2 inches to diameter to 4 or 6. I can't recall. But there is – there is some discrepancy as to their size. But to do this for a moment, what went on in the State court about the buttons? What – was there a hearing of some kind or were they just affidavits or what? I believe that there was – there was not an evidentiary hearing conducted. No, Your Honor. I believe it was based on affidavits in the record and that was what was before. And when were those affidavits introduced? In a post-trial hearing or in the motion to have the buttons removed or? I think the first time that – the motion for – to have the buttons removed was the first time that any information was provided in the record regarding the description of the buttons. And then when was the next time? I'm sorry? When was the next time? I think the post-trial proceedings. And that was the – the next in time with respect to the. The post-trial proceedings, you say, were conducted but only on affidavits? That's correct. But there was a hearing in the sense that the State court accepted affidavits, considered the issue and ruled on it. That's correct. There was – there was not testimony. If that's the case, how under AEDPA are we free to develop additional facts? I mean, I think it might be nice to have an evidentiary hearing and develop more facts, but are we really free to do it under AEDPA? I would concede that that is a problem, Your Honor. I believe that there is a – that we have that problem under the ADPA with respect to further fact-finding in this court. So what is the consequence of that? Is the consequence that you haven't made out your case? Because some of these buttons could – I mean, just to take my hypothetical about what the message is, it might depend on what the picture looks like, and we don't have it. That's correct. I was appointed in this case. I'm not blaming you. I'm asking you for your legal analysis. No, I understand the question. Your answer would be, I assume, that there's a sufficient amount of evidence about the buttons for you to prevail. That is correct. And I believe that's my – that is my point. I was going to answer the earlier question that a remand for further fact-finding in that regard would be helpful, but I do believe there's sufficient evidence in the record regarding the size of the buttons, when they were worn, what they depicted to adequately. It's certainly a reasonable inference that the picture shows this murder victim in a friendly, favorable light, not looking like a villain. That's correct. That's correct. A picture that his family would have been proud of. And that's correct, and I think that's certainly why they were wearing the buttons as they did. I don't believe that the Respondent's characterization of the motivation behind them is correct, and I think that that's precisely why it undermined any confidence that this Court can have in the fairness of this proceeding. So I would request that this Court grant relief with respect to not only the first case issue, as I discussed, but also the due process violation that occurred as a result of the wearing of the buttons. Thank you, counsel. Thank you. Thank you both very much. The case just argued will be submitted. The final case of the morning is Tran-Grapeville v. Kellogg.
judges: Reinhardt, Thompson, Berzon